STOPERA v DIMARCO

Docket No. 179907. Submitted March 20, 1996, at Detroit. Decided August
    30, 1996, at 9:10 A.M. Leave to appeal sought.

    Elizabeth M. Stopera brought an action in the Wayne Circuit Court
against Dominic A. DiMarco, seeking damages for injuries sus-
tained when the plaintiff, a single woman, contracted a sexually
transmitted disease during a romantic relationship with the defend-
ant, a married man. The plaintiff claimed that the defendant was
aware that he had the disease, that he had a duty to inform her,
that he breached that duty, and that as a result the plaintiff was
infected. The trial court, Andrea J. Ferrara, J., granted summary
disposition for the defendant, finding that, because the plaintiff and
the defendant engaged in the illegal activity of adultery, which
resulted in the injuries, the wrongful-conduct rule prevented her
from recovering damages for her injuries. The plaintiff appealed.

    The Court of Appeals *held*:

    1. The fact that the adultery statute is regularly violated and
rarely enforced does not prevent the application of the wrongful-
conduct rule with regard to violators of the statute.

    2. The culpability exception to the wrongful-conduct rule, which
applies where the plaintiff and the defendant have both engaged in
illegal conduct but one is more culpable than the other, applies
under the facts of this case. Although both parties engaged in ille-
gal adultery, only the defendant did so with the knowledge that the
likely result would be that the plaintiff would be infected with a
serious disease, while not making that fact known. The defendant
was significantly more culpable; the blame for the plaintiff's having
contracted the disease rests largely with the defendant, who is
almost entirely responsible for that injury. Summary disposition for
the defendant was improperly granted.

    Reversed and remanded.

    MARKMAN, J., dissenting, stated that the relative-culpability excep-
tion to the wrongful-conduct rule is not applicable in this case
where both parties are equally culpable in terms of their violation
of the adultery statute and equally culpable in their awareness of
the health risks associated with sexual intercourse, especially the
additional risks associated with sexual intercourse outside mar-

riage. The risk involved was a totally foreseeable one. The fact that the defendant's assessment of the risk may have been better informed than the plaintiff's assessment is insufficient to overcome the longstanding rule that a plaintiff cannot maintain an action if, in order to establish the cause of action, the plaintiff must rely, in whole or in part, on an illegal or immoral act or transaction to which the plaintiff is a party.

1. Actions — Wrongful-Conduct Rule.

The wrongful-conduct rule provides that a plaintiff cannot maintain an action if, in order to establish the cause of action, the plaintiff must rely, in whole or in part, on an illegal or immoral act or transaction to which the plaintiff is a party; when a plaintiff's action is based on the plaintiff's own illegal conduct and the defendant has participated equally in the illegal activity, the law will not lend itself to afford relief to one as against the other, but will leave them as it finds them; to implicate the rule, the plaintiff's conduct must be prohibited or almost entirely prohibited by a penal or criminal statute, although the statute need not be regularly enforced.

2. Actions — Wrongful-Conduct Rule — Culpability Exception.

A culpability exception to the rule that a plaintiff cannot maintain an action if, in order to establish the cause of action, the plaintiff must rely, in whole or in part, on an illegal or immoral act or transaction to which the plaintiff is a party is recognized where the plaintiff and the defendant have both engaged in illegal conduct, but one is more culpable than the other, such as where the plaintiff has acted under circumstances of oppression, imposition, hardship, undue influence, or great inequality of condition or age.

*G. Daniel Ferrera*, for the plaintiff.

*Draugelis & Ashton, L.L.P.* (by *Richard T. Haynes*), for the defendant.

Before: Bandstra, P.J., and Markman and M. D.Schwartz,* JJ.

Bandstra, P.J. Plaintiff appeals as of right the trial court's grant of summary disposition for defendant. We reverse and remand.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Although summary disposition was requested in this case under both MCR 2.116(C)(8) and (10), it is clear from the record the motion was granted under MCR 2.116(C)(8), for failure to state a claim on which relief can be granted. A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim, and we review summary disposition granted on this ground by considering as true the factual allegations in plaintiff's complaint. *Marcelletti v Bathani*, 198 Mich App 655, 658; 500 NW2d 124 (1993). Plaintiff, a single woman, was employed as a secretary in the finance department at Ford Motor Company's world headquarters in Dearborn, Michigan. Defendant was also employed by Ford as an executive. At all times relevant to this action, defendant was married with one daughter. For about one year, defendant and plaintiff had a romantic relationship and met repeatedly at plaintiff's home to engage in sexual intercourse. During this relationship, plaintiff contracted the human papillomavirus (HPV), which manifested itself as condylomas or genital warts. Plaintiff claims that defendant was aware that he had HPV, that he had a duty to inform plaintiff of his condition, and that he breached his duty to inform her, resulting in her infection. Plaintiff claims that she suffered and will continue to suffer physical, mental, and emotional pain as a result of defendant's conduct.

The lower court granted summary disposition to defendant relying on *Glazier v Lee*, 171 Mich App 216; 429 NW2d 857 (1988), and reasoning that, because plaintiff was engaged with defendant in the illegal activity of adultery, which resulted in her injuries, under the wrongful-conduct rule she could not bring

an action.[1] After summary disposition was granted in this case, *Glazier* and other Michigan precedents applying the wrongful-conduct rule were reviewed and summarized by a unanimous court in *Orzel v Scott Drug Co*, 449 Mich 550; 537 NW2d 208 (1995), a precedent that provides guidance to this panel in considering plaintiff's appeal.

In *Orzel*, the plaintiff alleged that the defendant, a pharmacist, acted negligently in the manner that a controlled drug was dispensed to the plaintiff pursuant to prescriptions issued by licensed physicians. The plaintiff admitted that he was addicted to the drug and that his purchases were illegal. The Court's analysis centered on the wrongful-conduct rule, which was summarized as:

> When a plaintiff's action is based, in whole or in part, on his own illegal conduct, a fundamental common-law maxim generally applies to bar the plaintiff's claim:
>
> "[A] person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party."
>
> When a plaintiff's action is based on his own illegal conduct, and the defendant has participated equally in the illegal activity, a similar common-law maxim, known as the "doctrine of in pari delicto" generally applies to also bar the plaintiff's claim:
>
> "[A]s between parties in pari delicto, that is equally in the wrong, the law will not lend itself to afford relief to one as

---

[1] The logically prior question, whether a negligence action can be maintained for damages arising from a sexually transmitted disease as alleged in this case, was not argued or decided below and was not raised as an issue in this appeal. We note that a federal court has recognized that cause of action, *Doe v Johnson*, 817 F Supp 1382, 1393 (WD Mich, 1993), but our decision should not be considered as indicating approval or disapproval of that conclusion.

against the other, but will leave them as it finds them." [*Id.*
at 558 (citations omitted).]

Plaintiff argues that this rule should not be
imposed against her because the statute making adul-
tery a felony, MCL 750.30; MSA 28.219, is never
enforced, regularly ignored, and "subrogated" to over-
riding public policy concerns regarding the spread of
venereal diseases.[2] We disagree. The Court in *Orzel*
stated that "[t]o implicate the wrongful-conduct rule,
the plaintiff's conduct must be prohibited or almost
entirely prohibited under a penal or criminal statute"
without suggesting that the statute had to be regularly
enforced. *Id.* at 561. Further, one rationale for the
wrongful-conduct rule is "by making relief potentially
available for wrongdoers, courts in effect would con-
done and encourage illegal conduct." *Id.* at 559.
Accepting as true plaintiff's premise that the adultery
statute is regularly violated and rarely enforced, it
would be inappropriate for this Court to condone and
further encourage this illegality by adopting plaintiff's
argument. Finally, the fact that a statute has not been
recently enforced does not mean that it has been
repealed de facto. *Washtenaw Co Rd Comm'rs v Pub-
lic Service Comm*, 349 Mich 663, 682; 85 NW2d 134
(1957) ("statutes do not wither by disuse"). The Legis-
lature has not seen fit to repeal the adultery statute,
notwithstanding arguments that it is archaic and
rarely enforced, perhaps believing the statute still
exerts a moral authority on people's behavior for the
common good. It would be a long overstepping of our

---

[2] Plaintiff does not argue that she did not know defendant was married
when she entered into a sexual relationship with him.

role as a court to ignore a statute duly enacted and never repealed by a coequal branch of government.

However, we conclude that summary disposition was improperly granted to defendant for another reason. In *Orzel, supra* at 569, the Court recognized a "culpability exception" to the wrongful-conduct rule where the plaintiff and the defendant have both engaged in illegal conduct, but one is more culpable than the other. "[E]ven though a plaintiff has engaged in serious illegal conduct and the illegal conduct has proximately caused the plaintiff's injuries, a plaintiff may still seek recovery against the defendant if the defendant's culpability is greater than the plaintiff's culpability for the injuries, such as where the plaintiff has acted ' "under circumstances of oppression, imposition, hardship, undue influence, or great inequality of condition or age." ' " *Id.* (citations omitted).

We find that the culpability exception applies under the facts alleged in the instant case. Plaintiff contends that defendant engaged in sexual intercourse with her while knowing that he had HPV, a sexually transmissible disease, and while not telling her about the risk she was taking.[3] It is one thing to engage in illegal adultery, as both plaintiff and defendant did, but quite another to do so knowing that a likely result will be infecting a sexual partner with a serious disease

---

[3] Plaintiff also argues that defendant used his position as a "high-powered executive" at Ford along with lies about his intentions to leave his wife to "dupe" plaintiff into the affair. These arguments would not protect plaintiff from criminal liability under the adultery statute and, similarly, they do not trigger the "culpability exception" to the wrongful-conduct rule imposed against plaintiff for her actions in violation of that statute. In the absence of the additional element present in this case, i.e., defendant's alleged failure to inform her of his HPV infection, plaintiff's action would be barred by the wrongful-conduct rule.

while not making that fact known, an offense of which only defendant is allegedly guilty.[4] Defendant was thus significantly more "culpable"; the blame for plaintiff's contracting HPV rests largely with him because he is almost entirely responsible for that injury. See *The American Heritage Dictionary* (2d College ed) ("culpable" is defined as "[r]esponsible for wrong or error; blameworthy"). To use other words drawn from *Orzel, supra at 569*, plaintiff suffered under "circumstances of . . . great inequality of condition" in the sense that she did not act with the same knowledge that defendant did in entering into the adulterous relationship. While defendant knew of his disease and its transmissibility, plaintiff did not share that knowledge and could not adjust her conduct accordingly.

Because the culpability exception applies under the facts alleged, plaintiff's action against defendant was improperly dismissed for failing to state a claim.[5] We

[4] Although, as the dissent points out, plaintiff should have known that sexual promiscuity in today's world is, as a general matter, risky business, defendant's culpability for the injury was significantly greater because of the specific knowledge he had about his condition and his failure to warn plaintiff of the imminent danger he presented to her.

[5] As we stressed in the preceding paragraph, this case involves a defendant who was significantly more culpable than the plaintiff. We consider this necessary for application of the culpability exception. In its discussion of the applicability of the exception, the *Orzel* Court listed only situations where a defendant was egregiously more at fault than a plaintiff, *Orzel, supra* at 569, without suggesting that a slight difference in the degree of culpability would be sufficient for its application. Further, to apply the culpability exception in cases where a defendant is only slightly more blameworthy would likely eviscerate the wrongful conduct rule entirely; presumably, a plaintiff will almost always be able to argue that, if the allegations of a complaint are proved, a defendant's misconduct will be shown to be at least somewhat greater than the plaintiff's. Under our analysis, this would be insufficient to avoid summary disposition. We reject the dissent's suggestion that ours is a "broad reading" of the rela-

reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

M. D. Schwartz, J., concurred.

Markman, J. (*dissenting*). I respectfully dissent. Although I concur with the majority's reasoning concerning the vitality of the wrongful-conduct rule in the context of the state's adultery laws, as well as with its identification of the relative-culpability exception to this rule, ultimately I cannot agree that the exception should apply in the present circumstances. Because a broad reading of the relative-culpability exception would quickly consume the wrongful-conduct rule itself,[1] I do not believe that the Supreme Court intended in *Orzel v Scott Drug Co*, 449 Mich 550; 537 NW2d 208 (1995), that the exception be read in this manner. *Wechsler v Wayne Co Rd Comm*, 215 Mich App 579, 597, n 12; 546 NW2d 690 (1996); *Richardson v Warren Consolidated School Dist*, 197 Mich App 697, 702; 496 NW2d 380 (1992).

The only basis upon which the majority invokes the relative-culpability exception is that defendant

---

tive-culpability exception and conclude it will not swallow the wrongful-conduct rule.

[1] A broad reading of the exception will ensure, under MCR 2.116(C)(10), that the jury will consider virtually all cases where the wrongful-conduct rule is asserted. Rarely will it be the case that a plaintiff will be unable to establish under MCR 2.116(C)(10) that a material issue of fact exists concerning an alleged *greater* culpability in some respect on the part of the defendant than himself.

Further, although the majority asserts that the adultery offense remains subject to the wrongful-conduct rule, I am hard-pressed to understand in what types of cases it will continue, in fact, to serve as a bar to any type of lawsuit. In what type of case would it matter at all that the plaintiff was or was not engaged in adultery? Nevertheless, the majority's adoption of the "significantly more culpable" standard may be useful in limiting the implications of its opinion.

engaged in sexual intercourse with plaintiff "while knowing that he had HPV, a sexually transmissible disease, and while not telling her about the risk she was taking." *Ante* at 570. Because I take judicial notice that the transmission of sexual diseases is an extremely well-understood risk of engaging in sexual intercourse, especially sexual intercourse outside the marital relationship, I believe that plaintiff should have been aware of this risk. The risk involved was an entirely foreseeable one. It is inconceivable to me that any adult of reasonable intelligence and awareness, much less an employee of the finance department of a large corporate entity, could in August 1992 not have been utterly certain that such a risk attended the act of sexual intercourse. This is especially true with regard to sexual intercourse with a person lacking in marital fidelity as plaintiff knew defendant to be and where defendant's sexual history was largely unknown to plaintiff at the time of her affair.[2] Therefore, I do not believe that the relative-culpability exception is properly invoked in this case.

Assuming that defendant was aware of his disease, he was nevertheless not certain that his disease

---

[2] Because of this additional element of risk, I believe that the causation requirement of the wrongful-conduct rule has also been established. *Manning v Bishop of Marquette*, 345 Mich 130, 136; 76 NW2d 75 (1956). Plaintiff's injuries occurred in significant part as a result of her relationship with someone with whom she was not married and with regard to whom she necessarily possessed less information concerning sexual history. In other words, the adulterous nature of her relationship was not incidental or tangential to her injuries but arguably was closely connected. Had plaintiff incurred some *nonsexually* transmitted infectious disease during the course of her relationship with defendant, I would analyze this case differently, both because the connection between such disease and the adultery would be far more attenuated and because such a disease would not have been a foreseeable part of the risk that plaintiff incurred by her relationship with defendant.

would be transmitted to plaintiff; he was merely aware that there was a risk that it might be. Plaintiff, on the other hand, assuming that she was unaware of defendant's disease, *should* have been also aware of the risk that a sexual disease could be communicated through her conduct. While it would be reasonable to conclude that defendant's assessment of this risk, based upon the knowledge available to him, established the risk at a higher level than did plaintiff's assessment, with the knowledge available to her, I do not believe that such fine calibrations of risk are what the Supreme Court intended in *Orzel.*

Plaintiff and defendant are equally culpable in terms of their violation of the law, MCL 750.30; MSA 28.219, which has given rise here to the wrongful-conduct analysis. Both are also equally "culpable" in their awareness of the physical health risks associated with sexual intercourse in the United States today, especially the additional risks associated with sexual intercourse outside marriage. That defendant's assessment of this risk may have been better informed than plaintiff's assessment is insufficient, in my judgment, to overcome the longstanding rule in Michigan that

> "a person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party." [*Orzel, supra* at 558, quoting 1A CJS, Actions, § 29, p 386.]

One need not indulge in high moralism to conclude, notwithstanding the manifestly different sexual mores in 1992 than in 1846 or 1931, 1948 or 1970 when the adultery felony was enacted and reenacted, that plaintiff's injury was a direct consequence of her engaging in the prohibited activity. And it was precisely the

kind of harm that contemporary advocates of the felony's maintenance might well posit as an important part of its rationale.[3]

There is no Michigan precedent for entertaining plaintiff's claim in this case. To apply the relative-culpability exception to these facts will result in opening the courthouse to an entirely new class of dispute, one that will almost certainly impose heavily upon the resources of the judicial branch. Rather than opening these floodgates, I believe that the integrity of the wrongful-conduct rule should be maintained, at least in cases in which the injury suffered by the wrongfully acting plaintiff was not reasonably foreseeable. Therefore, I respectfully dissent.

---

[3] While the initial justification for the felony was to guard the "sanctity of marriage," *People v Lipski*, 328 Mich 194, 197; 43 NW2d 325 (1950), the public-health consequences of extramarital sexual relations have become an increasingly well-debated issue, particularly in light of the appearance of the AIDS virus. See, e.g., *Risky Pleasure*, American Medical News, May 2, 1994, p 15.